IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01821-LTB-MJW

ROSS STRUCK,

    Applicant,

v.

STATE OF COLORADO ATTORNEY GENERAL,

    Respondent.

---

# RECOMMENDATION ON
# AMENDED APPLICATION FOR A WRIT OF HABEAS CORPUS PURSUANT
# TO 28 U.S.C. § 2254 (Docket No. 5)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to a Order of Reference to United States Magistrate Judge issued by District Judge Lewis T. Babcock. (Docket No. 10).

Before the court for a report and recommendation is the pro se incarcerated petitioner's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Docket No. 5). The respondents[1] timely filed an Answer (Docket No. 16). The court now being fully informed makes the following findings, conclusions, and recommendation that the Amended Application be denied and dismissed with prejudice.

---

[1]Respondents note that the petitioner named only the Attorney General of the State of Colorado as a respondent, and respondents have added the Executive Director of the Colorado Department of Corrections as a party. (Docket No. 16 at 1, n.1).

In January 2003, pursuant to a plea agreement, petitioner entered a guilty plea to all three counts of a three-count indictment which charged him with theft, criminal mischief, and third degree assault on an at-risk adult, and the People agreed to dismiss charges brought against the petitioner in another case. On June 4, 2003, petitioner was sentenced to ten years at the Department of Corrections ("DOC") for Count One, six years at the DOC for Count Two, and 18 months at the DOC for Count Three, with all three sentences to run concurrent with one another. Petitioner was also given a five-year period of mandatory parole.

Petitioner did not file a direct appeal, but on February 20, 2004, he filed a pro se Rule 35(a) motion in state court requesting that his sentence be reduced by one year because with the five years of mandatory parole, his sentence exceeded the 14-year sentencing cap agreed to in the plea agreement. Following a hearing at which petitioner was not represented by counsel, the state district court denied the petitioner's motion, which the court construed as having been brought pursuant to Rule 35(c). The Colorado Court of Appeals ("CCA") affirmed. People v. Struck, 04CA0921 (Mar. 2, 2006) (Docket No. 17-6). The CCA stated as follows:

> Defendant perpetrated a complicated insurance fraud involving numerous deliberate vehicle collisions. He agreed to plead guilty to theft of property worth $15,000 or more, criminal mischief ($500 or more, but less than $15,000), and third degree assault against an at-risk adult.
>
> The written plea agreement defendant signed stated that "[t]he People will recommend that the sentences on the three counts in this case be served concurrently, and the sentences shall not exceed 14 years." The accompanying "Request to Plead Guilty (Rule 11 Advisement)" sets forth the possible penalties as follows:
>
> Charge: **Theft**
> Count: **One**   Class: **Three**   Sentence To: DOC

    Minimum sentence: **2 year** (mitigating circumstances)
    Maximum Sentence: **24 years** (aggravating circumstances)
    Presumptive Range: **4 years to 12 years** Mandatory Parole: **5 years**
    Fine from minimum **$3,000** to maximum **$750,000**

    Charge: **Criminal Mischief**
    Count: **Two**   Class: **Four**   Sentence To: DOC
    Minimum sentence: **1 year (mitigating circumstances)**
    Maximum Sentence: **12 years (aggravating circumstances)**
    Presumptive Range: **2 year[s] to 6 years**     Mandatory Parole: **3 years**
    Fine from minimum **$2,000** to maximum **$500,000**

    Charge: **Third Degree Assault on an At-Risk Adult**
    Count: **Three**   Class: **Six**   Sentence To: DOC
    Minimum sentence: **6 months (mitigating circumstances**)
    Maximum Sentence: **3 years (aggravating circumstances**)
    Presumptive Range: **1 year to 18 months**     Mandatory Parole: **1 year[]**
    Fine from minimum **$1,000** to maximum **$100,000**

(emphasis in original)

    A separate section of the agreement contained the following statement: "I know that I could be required to serve up to three years on parole in addition to serving a sentence."

    At the providency hearing, the trial court correctly advised defendant concerning the mandatory parole period applicable to each offense. The court then asked defendant whether anyone had made any promises concerning his sentence other than the stipulation"that the court will not sentence you to more that [sic] 14 years at the Department of Corrections." After defendant verified that he had received no other promises, the court accepted his guilty pleas.

    The court imposed a ten-year sentence to the Department of Corrections (DOC) on the theft conviction, a six-year DOC sentence on the criminal mischief conviction, and an eighteen-month DOC sentence on the conviction for third degree assault of an at-risk adult. The court ordered that all three sentences be served concurrently and noted that there was "a five-year parole."

The following year, defendant filed this postconviction motion in which he alleged that the combined length of his ten-year DOC sentence and five-year period of mandatory parole exceeded the fourteen-year cap contained in the plea agreement. As relief, defendant asked that the court reduce his sentence to confinement by one year. Defendant said that, in the alternative, he "may have to withdraw his plea if not corrected." The trial court scheduled the matter for a hearing.

After the People filed a response opposing defendant's motion, defendant wrote to the court asking that the court appoint counsel to represent him at the hearing on his postconviction motion. In that same letter, defendant restated his contention concerning the sentence cap and added an allegation that one of his attorneys had "told [him] different circumstances than what has been imposed."

Defendant represented himself at the hearing on his motion. The trial court determined that the cap of fourteen years pertained only to the DOC component of defendant's sentence. The court further concluded that defendant was fully advised concerning the applicability of the five-year mandatory parole period. Accordingly, the court denied relief.

I.

Defendant argues that the trial court erred by concluding that the agreement for a fourteen-year sentence cap did not encompass the five-year period of mandatory parole. We disagree.

Cases involving a postconviction challenge to the imposition of mandatory parole require a two-part inquiry. First, the court must apply a de novo standard of review to the parties' plea agreement and determine whether, when viewed objectively, the defendant was promised, as a material inducement to his or her plea, a sentence related to mandatory parole that is statutorily prohibited. If the defendant was not so promised, then the agreement is not invalid on this ground and the court must reach the second question: whether the defendant was properly advised that he or she would be subject to mandatory parole, the maximum length of that parole, and that mandatory parole is a consequence distinct from imprisonment. Craig v. People, 986 P.2d 951 (Colo. 1999); People v. Wirsching, 30 P.3d 227, 229 (Colo. App. 2000).

The supreme court has detailed the principles of interpretation we are to employ when deciding whether a plea agreement contains a provision that alters the statutory requirement for mandatory parole:

The mere absence of an explicit reference to mandatory parole in

written or oral descriptions of the plea agreement does not require us to construe the parties' bargain as eliminating or modifying the application of this statutory requirement. See Craig, 986 P.2d at 961. To the contrary, "[i]n the absence of express language by the parties indicating that they have actually agreed to eliminate or circumvent the parole requirement, we will construe the plea agreement as envisioning a legal sentence." Id. at 961.

Further, where the parties speak in terms of a sentence to the "Department of Corrections" or the "D.O.C.," we will treat that sentence concession as concerning itself only with the confinement component of the sentence. See id. at 962. Thus, a plea agreement calling for a sentence of "five years, D.O.C." should be understood as envisioning a sentence that consists of both a five year term in a Department of Corrections facility, and any additional period of mandatory parole demanded by section [18-1.3-401(1)(a)(V)(A)].

Benavidez v. People, 986 P.2d 943, 948 (Colo. 1999).

Here, the section of the plea agreement that sets forth the applicable penalties indicated that the "Sentence" for each offense was to be "To: DOC." There was no express language indicating an agreement to eliminate or circumvent the mandatory parole requirement. Therefore, we construe the agreement as envisioning a legal sentence, which would include the statutorily mandated period of parole.

Although we reach this conclusion as a matter of law, we note that, at the providency hearing, defendant verified that the scope of the parties' agreement was limited to a stipulation that the court would not sentence him to more that [sic] fourteen years "at the Department of Corrections."

II.

Defendant contends his plea was not knowingly and voluntarily entered because he was not sufficiently advised concerning mandatory parole. We conclude that any error was harmless.

An advisement regarding mandatory parole must indicate that a mandatory parole term occurs after, in addition to, or distinct from any period of imprisonment, and it must include a statement concerning the length of the parole period. Craig v. People, supra; People v. Moriarity, 8 P.3d 566, 568 (Colo. App. 2000).

However, if the advisement concerning mandatory parole was improper, the error is harmless if the length of the prison sentence and the

mandatory parole term, combined, falls within the range of penalties that the defendant was advised he could receive as a consequence of his plea. See Clark v. People, 7 P.3d 163, 166 (Colo. 2000) (where the defendant's term of incarceration plus the term of mandatory parole is less than the maximum term of incarceration he or she risked receiving, the defendant is not prejudiced by the failure to advise of the length of mandatory parole.).

Here, defendant signed a plea agreement in which he explicitly acknowledged that "I know that I could be required to serve up to three years on parole in addition to serving a sentence." This statement satisfies Craig's requirement that the defendant be advised that mandatory parole is distinct from, and in addition to, imprisonment.

However, this statement understated the length of the applicable parole period by two years. According to the defendant, he relied on this misstatement and concluded that it governed rather than the portion of the written advisement that stated that the theft conviction carried a mandatory parole period of five years. He also asserts that he relied on this language rather than the trial court's statement at the providency hearing correctly indicating that a conviction for theft carries a five-year period of mandatory parole.

Thus, defendant asserts that he relied on the plea agreement statement that he could be required to serve up to three years on parole in addition to as many as fourteen years at DOC. However, even assuming this was the advice upon which he relied, the combined total of the prison sentence and mandatory parole would be seventeen years. In comparison, the combined total of the prison sentence and mandatory parole imposed by the court was fifteen years. Because the total sentence as imposed is less than the combined total upon which he asserts he relied, defendant's contention does not demonstrate prejudice from the asserted deficiency in the advisement. Therefore, we conclude the error was harmless. See Clark v. People, supra.

III.

Finally, defendant claims the trial court erred by not appointing postconviction counsel because the trial court determined that his allegations were sufficient to warrant an evidentiary hearing. We are not persuaded.

Assuming, without deciding, that there is a limited right to counsel in postconviction proceedings, there is no right to counsel when, as a matter of law, the allegations are not sufficient to warrant a hearing. See

> People v. Hickey, 914 P.2d 377 (Colo. App. 1995); but see People v. Silva, _ P.3d _ (Colo. App. No. 04CA0661, June 2, 2005)(questioning whether there is a statutory or constitutional right to counsel in postconviction proceedings).
>
> A trial court may deny a Crim. P. 35(c) motion without holding an evidentiary hearing if the motion, files, and record of the case clearly establish that the allegations of the motion are without merit and do not warrant postconviction relief. White v. Denver Dist. Court, 766 P.2d 632 (Colo. 1988).
>
> A motion under Crim. P. 35(c) also may be denied without a hearing if the claims are without merit as a matter of law. See People v. Hartkemeyer, 843 P.2d 92, 93 (Colo. App. 1992).
>
> We have determined that defendant's contentions are without merit as a matter of law and did not require an evidentiary hearing. Consequently, defendant was not entitled to counsel.
>
> The order is affirmed.

(Docket No. 17-6). The Colorado Supreme Court denied the petition for writ of certiorari on June 26, 2006. (Docket No. 5 at 9).

In his Amended Petition (Docket No. 5), the petitioner raises the following three grounds for habeas relief: (1) he was never advised of parole distinct from any sentence imposed to the DOC, (2) whether the state district court must appoint counsel to represent indigent litigants, and (3) whether the court had the obligation to make sure that a defendant entering a guilty plea to a felony understands that mandatory parole occurs after, in addition to, or distinct from any sentence.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693

(2002). "Under AEDPA, 'federal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits.'" Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir. 2005).

More specifically, 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e)(1). With regard to § 2254(d)(1), the U.S. Supreme Court has stated that

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. . . . A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* [*v. Taylor*, 529 U.S. 362, 409-10 (2000),] that an unreasonable application is different from an incorrect one. . . . See also *id.*, at 411 . . . (a federal

> habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. at 694.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases- indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "Furthermore, under § 2254(d)(1), the only 'federal law' [the court] consider[s] is 'clearly established federal law as determined by decisions, not dicta, of the Supreme Court.' . . . Thus, 'an absolute prerequisite for [a habeas petitioner's] claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent.'" Parker v. Scott, 394 F.3d at 1308.

With the above standards in mind, this court will review the petitioner's claims for habeas corpus relief.

**Failure to Appoint Counsel**

Respondents first correctly assert that the petitioner's claim that he was entitled to appointed counsel when pursuing his state post-conviction motion is not cognizable in a federal habeas corpus proceeding because it is not based on a federal right. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions . . . and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."); Thomas v.

Gibson, 218 F.3d 1213, 1222 (10th Cir. 2000) ("There is no constitutional right to an attorney in state post-conviction proceedings."); Kasper v. Estep, 2007 WL 1834174, *9 (D. Colo. June 25, 2007) ("There is no constitutional right to counsel in collateral proceedings."), appeal dismissed, 256 Fed. Appx. 202 (10th Cir. Nov. 27, 2007), cert. denied, 128 S. Ct. 1753 (2008). Respondents correctly note that petitioner's claim is based on a limited state statutory right to counsel in post-conviction proceedings, which is not a proper ground for a claim raised in a habeas corpus petition.

**Mandatory Parole**

"A criminal defendant's state court guilty plea must comport with due process. . . . Thus, . . . the plea must be knowing and voluntary." Gonzales v. Tafoya, 515 F.3d 1097, 1118 (10th Cir. 2008). "A plea is 'knowing' if the defendant has 'a full understanding of what the plea connotes and of its consequences.' . . . In order to be 'voluntary,' a plea must be 'the product of a deliberate, intelligent choice." Id. (quoting Boykin v. Alabama, 395 U.S. 238, 244 (1969); Cunningham v. Diesslin, 92 F.3d 1054, 1060 (10th Cir. 1996)). This court must determine whether the state court's determination concerning the petitioner's plea was contrary to or an unreasonable application of federal law. Id. (citing Johnson v. Atherton, 296 F.3d 991, 993 (10th Cir. 2002) (applying the contrary to or unreasonable application of standard to a challenge to a guilty plea)).

Respondents assert that the petitioner was sufficiently advised concerning the mandatory parole associated with his sentence and suffered no harm from an error in the plea advisement. In support of this argument, respondents note the following. The plea agreement including the following sentence concession: "the People will

recommend that the sentence on the three counts in this case be served concurrently, and the sentence shall not exceed 14 years." Furthermore, in connection with his plea agreement, petitioner also signed an advisement form pursuant to Colo. R. Crim. P. 11 in which it was stated, "I know that I could be required to serve up to three years on parole in addition to serving a sentence." Respondents assert that although misstating the length of the parole period, which was in fact five years, that statement showed that the petitioner knew that the mandatory period was not part of the DOC sentence. In addition, during the providency hearing, the trial court verified that petitioner understood "what's in the written plea of guilty and under Rule 11." The court also pointed out that petitioner could receive a five-year mandatory parole. Therefore, respondents assert that petitioner entered his plea agreement knowingly and voluntarily because he was sufficiently advised.

In addition, respondents assert that as concluded by the CCA, petitioner was not prejudiced by the erroneous reference to the three-year mandatory parole because his sentence did not exceed the sentence concession he was given. Respondents contend that assuming petitioner relied on the erroneous reference, his combined total of sentence and mandatory parole could have been 17 years (i.e., 14 years to the DOC plus three years of mandatory parole), yet the sentence imposed by the trial court resulted in a combined total of 15 years (i.e., ten years to the DOC plus five years of mandatory parole). Respondents thus assert that the petitioner suffered no harm. In sum, respondents contend that the petitioner has failed to show that the state court decision was either contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or was based on an unreasonable determination

of the fact. Therefore, they argue that the petitioner is not entitled to federal habeas corpus relief. This court agrees.

"A defendant must be advised at the time of entry of his plea of the mandatory period of parole he will be forced to serve as a direct consequence of the entry of the plea." Alexander v. Novak, 74 F. Supp.2d 1027, 1033 (D. Colo. 1999). "To the extent the judge erred in failing to mention the mandatory parole, however, such" may be "deemed harmless *ab initio*" under the circumstances of the case, such as those here. Id. See Valentino v. Ray, 2001 WL 863569 (10th Cir. July 31, 2001) (denying a certificate of appealability in a case in which the trial court failed to advise the defendant on a term of mandatory parole because the actual sentence imposed was less than the maximum penalty of which he was advised) (citing People v. Tyus, 776 P.2d 1143, 1444 (Colo. Ct. App. 1989) (The trial court's failure to advise defendant of the mandatory parole term did not constitute reversible error . . . . Because the length of defendant's sentence was less than the maximum that he was advised he could receive, the trial court properly determined that defendant had entered a valid guilty plea."); United States v. Barry, 895 F.2d 702, 705 (10th Cir. 1990) ("stating that 'the [trial] court's failure to advise [the defendant] of the term of supervised release [did not] prejudice[] his decision to plead guilty' because the 'total sentence-including the term of supervised release-[was] only a fraction of the maximum penalty of which he was advised'")).

Here, as pointed out by the CCA and the respondents, even assuming the petitioner relied on the plea agreement statement that he could be required to serve up to three years on parole in addition to as many as fourteen years at DOC, the combined total of the prison sentence and mandatory parole would have been seventeen years,

whereas the combined total of the prison sentence and mandatory parole actually imposed by the court was fifteen years. Therefore, because the total sentence actually imposed was less than the combined total upon which petitioner allegedly relied, the petitioner's claim does not demonstrate prejudice from the asserted deficiency in the advisement. Any error was harmless. There is no basis for habeas relief here.

**RECOMMENDED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Docket No. 5) be denied and dismissed with prejudice.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:    June 6, 2008        <u>s/ Michael J. Watanabe</u>
             Denver, Colorado    Michael J. Watanabe
                                     United States Magistrate Judge